IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CENTER FOR CIVIC ACTION,
PROGRESSNOW NEW MEXICO, and
SEMILLA ACTION,

       Plaintiffs,

vs.                                                                              No. _____CIV 25-1120_____

THE CITY OF ALBUQUERQUE BOARD OF
ETHICS AND CAMPAIGN PRACTICES, and
ETHAN WATSON, in his capacity
as City Clerk,

       Defendants.

<u>**VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**</u>

**I. INTRODUCTION**

       Plaintiffs bring this Complaint for Declaratory and Injunctive Relief challenging, both facially and as-applied to Plaintiffs, the constitutionality of the City of Albuquerque Charter and the Albuquerque City Clerk's rules imposing registration, disclosure and reporting requirements on organizations deemed by the City Clerk and the Albuquerque City Charter to be "measure finance committees."

       Under well-established federal law, including decisions from the Tenth Circuit Court of Appeals and other federal district courts in the circuit, these statutes, and the manner in which Defendants have interpreted them, are overbroad, unconstitutionally vague and impermissibly burden Plaintiffs' constitutional right of free expression.  Moreover, this action challenges the unlawful and unconstitutional actions of the City Clerk, who exceeded his authority by issuing

overbroad campaign finance rules not authorized by the City Charter, state law, or the Constitution. The Clerk's rules chill protected political speech and association by imposing burdensome registration, reporting, and disclaimer requirements that go far beyond what the Supreme Court and the United States Court of Appeals for the Tenth Circuit allow. The Clerk's actions constitute an abuse of authority because administrative officers may not enlarge, amend, or create substantive campaign finance law absent City Charter authorization. Nor can the Clerk enact rules that contradict the City Charter. Plaintiffs thus request that this Court declare that the challenged laws and rules as written, interpreted, and enforced by Defendants violate the First and Fourteenth Amendments to the United States Constitution and that the City Clerk's Rules are an abuse of authority.

Plaintiffs also request that this Court enjoin Defendants from enforcing the challenged laws and rules against them.

## II.  JURISDICTION AND VENUE

1.     This matter arises under Section 1 of the Civil Rights Act, 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2.     This Court has jurisdiction pursuant to 28 USC §§ 1331 and 1343(a).

3.     Venue is proper in this Court because Defendant Watson has his office in New Mexico, Defendant Board of Campaign Practices holds its meetings and hearings in New Mexico, and the harm to Plaintiffs is occurring in the state of New Mexico.

## III. PARTIES

A.     **Plaintiffs**

4.      Plaintiff Center for Civic Action ("CCA") is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code. CCA has its principal place of business in Albuquerque, New Mexico.  CCA was formed for the primary purpose of educating, engaging, and mobilizing historically underrepresented communities in important legislative and policy campaigns in New Mexico.

5.      CCA runs statewide policy advocacy and lobbying campaigns focused on economic justice, early childhood education, tax and budget reform, democracy reform and election administration, among other issues. CCA also communicates with voters about these critical policy issues and how they can engage with their elected officials to pass these policies into law.

6.      Plaintiff ProgressNow New Mexico ("PNNM") is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code. PNNM has its principal place of business in Albuquerque, New Mexico. PNNM was formed for the primary purpose of creating an ongoing issue advocacy culture in New Mexico by focusing on amplifying the voices of those systemically excluded, ultimately giving communities the tools they need to shape their own future.

7.      PNNM engages in lobbying activities for or against bills during the state legislative session, conducts education campaigns on the role oil and gas plays in our state politics, and monitors online disinformation narratives.

8.      Plaintiff Semilla Action is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code. Semilla Action has its principal place of business in Albuquerque, New Mexico. Semilla Action was formed for the primary purpose of empowering

Black, Indigenous, and people of color (BIPOC) communities in the Southwest, particularly in New Mexico.

9.    Semilla Action is a social justice and environmental advocacy organization that works to influence policy and engage communities in climate and racial justice movements.

**B.    Defendants**

10.    Defendant Ethan Watson is the duly appointed City Clerk of Albuquerque, New Mexico.  Defendant Watson is responsible for administering elections, overseeing campaign finance disclosures, and implementing the City's campaign finance laws and rules. The City Clerk is vested with authority under the Albuquerque City Charter to promulgate rules, issue guidance, and enforce compliance with campaign finance requirements, including the power to investigate, refer matters to the Board of Ethics and Campaign Practices, and impose administrative penalties. Albuquerque City Charter ("Charter") Art. XIII, Sec 10. At all times relevant to this Complaint, the City Clerk acted under color of state and municipal law.

11.    Defendant Ethan Watson is being sued in his official capacity as City Clerk.

12.    Defendant Albuquerque Board of Ethics and Campaign Practices ("Board of Ethics") is an administrative body established by the City of Albuquerque pursuant to Charter Article XII. The Board of Ethics is charged with the authority to interpret, administer, and enforce the City's campaign finance laws and ethics code, including adjudicating complaints, imposing fines, and issuing advisory opinions. Charter Art XII and XIII. At all times relevant to this Complaint, the Board of Ethics acted under color of state and municipal law.

4

13.     The Board of Ethics is sued in its official capacity as the entity responsible for applying and enforcing the campaign finance rules and regulations that are the subject of this action.

**IV. FACTS**

A.      **The City Charter**

14.     The Charter defines a Measure Finance Committee ("MFC") as "a political committee or any person or combination of two or more persons acting jointly in aid of or in opposition to the effort of anyone seeking to have their name placed on the ballot for city office, a petition to place a measure on the ballot pursuant to Article III of this Charter, voter approval or disapproval of one or more measures on the ballot and/or the election to, or recall from, office of one or more candidates for office when such person or people have accepted contributions in excess of $250 or make expenditures in excess of $250 for any of the purposes listed heretofore." Charter Art XIII, Sec 2(y).

15.     The Charter defines "person" as "any individual, cooperative association, club, corporation, company, firm, partnership, joint venture syndicate, profit or nonprofit organization, or other entity." Art XIII, Sec 2(z).

16.     The City requires that MFCs register with the City Clerk once they have raised or spent more than $250 in support of or opposition to a city measure or candidate.  At registration, the MFC must identify a chairperson and a treasurer.  Art XIII, Sec 6; 2025 Rules by the Albuquerque City Clerk for the Election Code and the Open Ethical Election Code of the City Charter ("Clerk's Rules"), attached as **Exhibit 1**, Part 8.

17.    The Charter mandates that each MFC establish exactly one campaign checking account per election where all contributions received must be deposited into that account, and all disbursements must be made from that account. Art XIII, Sec 4(c).

18.    On a monthly basis, the MFC must submit bank statements reflecting the prior month's activity to the Campaign & Election Auditor by the second Monday of each month, for as long as the MFC is required to file reports.  Art XIII, Sec 4(c)(3).

19.    The MFC must file regular statements with the City Clerk disclosing:

    a.    The total of all contributions.

    b.    For individual contributors: name, address, occupation, employer (where applicable), business address, and the amount of each contribution and cumulative totals.

    c.    For non-individual contributors: name, address, nature of business or activities, and identities of owners or managers, plus amounts contributed.

    d.    All expenditures, including reimbursements, the nature of the expenditure, and payee names and addresses.

    e.    If the MFC supports or opposes more than one candidate or measure, the disclosures must allocate contributions and expenditures to the specific candidate(s) or measure(s) appropriately, and any overlapping expenses must be apportioned pro rata.

Art XIII, Sec 4(d).

20.    Reporting continues until the MFC files a dissolution report affirming the committee no longer exists, and that its bank account balance is zero.  Art XIII, Sec 4(d)2(F).

21.     The City terminates MFC registrations every year on December 31st. Art XIII, Sec 6(c).

22.     The final campaign financing statement must disclose the method by which any remaining funds were disposed (returned to donors, gifted to charity or transferred to the City's General Fund, or retained for runoff). Art. XIII, Sec 4(i).

23.     If an MFC receives a contribution that exceeds thirty percent (30%) of the Mayor's salary, the MFC must immediately change its name to include the name of the contributor. Art. XIII, Sec 4(n).

24.     The Charter requires MFCs to file with the City Clerk images of all broadly distributed campaign material on or prior to the day the financial report disclosing the expenditure for said campaign material is due. If the campaign material is a video or radio broadcast, a copy of the video or radio broadcast shall be uploaded or a link to a copy of the video or radio broadcast shall be sent directly to the City Clerk and the Independent Auditor. Art XIII, Sec 5(a).

25.     The Charter requires candidates and chairpersons of MFCs ensure that all campaign materials display a clear and conspicuous disclaimer stating information on how the material was paid for and any additional information as required by the rules promulgated by the City Clerk. Art XIII, Sec 5(b).

26.     The Charter defines "campaign material" as "any published, printed or broadly distributed campaign advertising or communications such as newspaper advertisements, handbills, petitions, circulars, letters, radio or TV broadcasts, cable distributions, social media sites, websites, electronic or telephonic transmissions or similar written material *used in a campaign by a candidate or a Measure Finance Committee*." Art XIII, Sec 2(d) (emphasis added).

27.     MFCs are subject to both criminal and civil penalties if they fail to comply with the registration and reporting requirements of the City Charter and the Clerk's Rules. Art XIII, Sec 10 and 11.

28.     Plaintiffs challenge the Charter's definition of "Measure Finance Committee" to include any person, group, or entity that supports or opposes a candidate or ballot measure once it has raised or spent more than $250.

29.     This definition sweeps far beyond entities whose "major purpose" is electioneering, in direct conflict with binding federal precedent, including *Buckley v. Valeo*, 424 U.S. 1 (1976), *Colorado Right to Life Committee, Inc. v. Coffman*, 498 F.3d 1137 (10th Cir. 2007), *New Mexico Youth Organized v. Herrera*, 611 F.3d 669 (10th Cir. 2010) and related Tenth Circuit authority.

**B.     The City Clerk's Rules**

30.     The Clerk's Rules took effect on February 10, 2025. See https://www.cabq.gov/clerk/news/notice-of-final-rulemaking-election-code-1.

31.     The Clerk has applied these rules to "candidates, Measure Finance Committees, candidate committees, and all individuals, entities, and organizations governed by, or subject to, the provisions of the City Charter and State Law." Exhibit 1, Part 2(C), p. 5.

32.     The Clerk's Rules acknowledge that if the Rules conflict with the provisions of the City Charter or State Law, the provisions of the City Charter or State Law shall prevail. Exhibit 1, Part 2(B), p. 5.

33.     While the City Charter limits campaign material disclaimer obligations to candidates and MFCs, the Clerk's Rules go much further. First, the Clerk's Rules define "disclaimer" as "a disclosure and means a statement identifying the person(s), organization(s), or

political committee(s) who paid for, or is otherwise responsible for funding or authorizing campaign materials. It includes any notice required to ensure transparency about the origin, financial backing, and authorization of such materials." Exhibit 1, Part 1(4).

34.     The Clerk's Rules require MFCs and candidates to disclose the name of the campaign or committee that authorized the distribution or broadcast of the campaign materials. Exhibit 1, Part 18(A).

35.     In addition to the requirements for MFCs and candidate campaigns, the Clerk's Rules have unique disclaimer requirements for "Independent Expenditure, Coordinated Expenditures and MFC Supporting or Opposing a Measure." Exhibit 1, Part 18(B). These requirements are stated as follows:

> 1.     In addition to the required disclaimers, campaign materials produced for Independent Expenditures, Coordinated Expenditures, or Measure Finance Committees shall include:
>
>> a.     The words "Paid for by" followed by the name of the entity making the Expenditure and its Chairperson;
>>
>> b.     The words "Top Five Donors" followed by a list of the five (5) persons or entities making the largest aggregate donations to the entity[1] during the twelve (12) month period before the date of such communication; and
>>
>> c.     For Independent Expenditures and Measure Finance Committees: A statement that the campaign material is not authorized by any candidate or candidate's campaign committee.
>>
>> d.     For Coordinated Expenditure: A statement that it is authorized by a campaign or committee, and the communication must include the name of the campaign or committee that authorized the expenditure.

---

[1] The Clerk's Rules do not define "entity."

Exhibit 1, Part 18(B)(1).

36.    The term "required disclaimers" is not further defined by the Clerk's Rules.

37.    The phrase "campaign materials produced for Independent Expenditures, Coordinated Expenditures, or Measure Finance Committees" contradicts the City Charter's definition of "campaign material" since the Charter defines "campaign materials" as only those advertisements made by MFCs and candidates.

38.    The Clerk's Rules further provide that Independent Expenditure, Coordinated Expenditure, and MFC Supporting or Opposing a Measure campaign materials must further disclose "Secondary Donors."  The Clerk's Rules state "[i]f any of the top five donors is a committee, organization, or other entity the disclaimer must also disclose the name of the top two donors of $1,000 or more to that committee." Exhibit 1, Part 18(B)(2).

39.    The Clerk's Rules provide no definition of "secondary donor." It is unclear whether "secondary donor" refers to the second-largest direct donor to the entity after the top five donors, the second donor that is not a "committee, organization, or other entity", or an indirect donor who contributed to one of the entity's top five donors. If the latter, the Rule would effectively force "entities" making independent or coordinated expenditures to trace and disclose "donors to donors," compelling intrusive investigations into the internal finances of other organizations and chilling association. Because the Clerk's Rules fail to provide fair notice and invites arbitrary enforcement, it is void for vagueness under the First and Fourteenth Amendments.

40.    If the Court construes the Clerk's Rules as requiring disclosure of the top two donors to the top five donors of an "entity", such a requirement is unconstitutional because it is not narrowly tailored. Under Tenth Circuit doctrine addressing municipal and state disclosure

schemes, tailoring commonly includes limiting disclosure to donors who earmark funds for electoral communications or providing mechanisms that avoid sweeping in donors who did not intend to fund electioneering (and recognizing that broader, "donors-to-donors" mandates risk overbreadth). *Wyo. Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023); *Sampson v. Buescher*, 625 F.3d 1247 (10th Cir. 2010). The City's upstream donor disclosure mandate disregards this limitation and forces exposure of individuals who neither intended nor authorized electoral spending, chilling protected association in violation of the First and Fourteenth Amendments.

41.    The Albuquerque City Charter defines "campaign materials" as only those communications used by candidates and MFCs. The City Clerk's 2025 Rules, however, impose disclaimer requirements on "all campaign materials broadly distributed" and the scope of the Rules apply to "all individuals, entities, and organizations subject to the City Charter and State Law." In so doing, the Clerk unlawfully expands the scope of the Charter's definition and imposes disclaimer obligations on individuals and groups never contemplated by the Charter. This direct contradiction between the Charter and the Rules renders the disclaimer requirements ultra vires, unconstitutional, and void.

### C.    The Mission and Activities of Plaintiff Center for Civic Action

42.    Plaintiff CCA is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code.

43.    CCA is not a political committee nor an MFC.

44.    CCA is a social welfare organization formed for the purpose of educating, engaging, and mobilizing historically underrepresented communities in important legislative and policy campaigns in New Mexico.

45.    CCA does not have as its major purpose influencing the outcome of elections.

46.    CCA's annual budget is approximately $1 million.

47.    CCA has participated in the Albuquerque municipal elections in prior years and plans to do so in this and future elections by supporting or opposing Albuquerque candidates and supporting or opposing Albuquerque ballot measures.

48.    While CCA's major purpose is not the nomination or election of candidates, the Albuquerque Charter requires CCA to assume the burdens of political committee registration.

49.    CCA intends to expend an insubstantial amount of its annual budget, approximately $25,000, in political speech concerning the Albuquerque run-off election. These expenditures include making monetary or in-kind contributions to MFCs, distributing advertisements, and canvassing voters to support or oppose run-off candidates for the Albuquerque municipal election.

50.    If forced to comply with the Clerk's Rules, CCA will be compelled to publicly disclose donor information and include government-mandated messages in advertisements, which will burden free speech rights and deter supporters from contributing.

51.    CCA reasonably fears imminent enforcement of Albuquerque's campaign finance laws and rules, which would subject CCA to fines, penalties, and reputational harm. The chilling effect has already deterred CCA from engaging fully in planned speech.

**D.    The Mission and Activities of ProgressNow New Mexico**

52.    Plaintiff PNNM is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code.

53.    PNNM is not a political committee nor an MFC.

54.     PNNM is a social welfare organization formed for the primary purpose of creating an ongoing issue advocacy culture in New Mexico by focusing on amplifying the voices of those systemically excluded, ultimately giving communities the tools they need to shape their own future.

55.     PNNM does not have as its major purpose influencing the outcome of elections.

56.     PNNM's annual budget is approximately $360,000.

57.     PNNM has participated in the Albuquerque municipal elections in prior years and plans to do so in this and future elections by supporting or opposing Albuquerque candidates and supporting or opposing Albuquerque ballot measures.

58.     PNNM would like to spend an insubstantial amount of its annual budget, approximately $15,000, in political speech concerning the Albuquerque run-off election. These expenditures would include distributing paid social media advertisements to support or oppose run-off candidates for the Albuquerque municipal election.

59.     While PNNM's major purpose is not the nomination or election of candidates, the Albuquerque Charter requires PNNM to assume the burdens of political committee registration.

60.     If forced to comply with the Clerk's Rules, PNNM will be compelled to publicly disclose donor information and include government-mandated messages in advertisements, which will burden free speech rights and deter supporters from contributing.

61.     PNNM reasonably fears imminent enforcement of Albuquerque's campaign finance laws and rules, which would subject PNNM to fines, penalties, and reputational harm. The chilling effect has already deterred PNNM from engaging fully in planned speech.

**D**.    **The Mission and Activities of Semilla Action**

62.    Plaintiff Semilla Action is a New Mexico nonprofit corporation tax exempt under Section 501(c)(4) of the Internal Revenue Code.

63.    Semilla Action is not a political committee nor an MFC.

64.    Semilla Action is a social justice and environmental advocacy organization that works to influence policy and engage communities in climate and racial justice movements.

65.    Semilla Action does not have as its major purpose influencing the outcome of elections.

66.    Semilla Action's annual budget is approximately $1,144,472.

67.    Semilla Action would like to participate in this and future elections by supporting or opposing Albuquerque candidates and supporting or opposing Albuquerque ballot measures. The burdensome requirements imposed upon Albuquerque MFCs has deterred Semilla Action from doing so in prior Albuquerque elections.

68.    Semilla Action intends to spend an insubstantial amount of its annual budget, approximately $20,000, in political speech concerning the Albuquerque run-off election. These expenditures include canvassing voters and providing door literature to support or oppose run-off candidates for the Albuquerque municipal election.

69.    While Semilla Action's major purpose is not the nomination or election of candidates, the Albuquerque Charter requires Semilla Action to assume the burdens of political committee registration.

70.     If forced to comply with the Clerk's Rules, Semilla Action will be compelled to publicly disclose donor information and include government-mandated messages in advertisements, which will burden free speech rights and deter supporters from contributing.

71.     Semilla Action reasonably fears imminent enforcement of Albuquerque's campaign finance laws and rules, which would subject Semilla Action to fines, penalties, and reputational harm. The chilling effect has already deterred Semilla Action from engaging in planned speech.

## V. CAUSES OF ACTION

### Count I: Violation of the First and Fourteenth Amendments' Guarantee of Free Speech and Expression
(All Plaintiffs as to all Defendants)

72.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

73.     In *Buckley v. Valeo*, 424 U.S. 1 (1976), the United States Supreme Court construed the term "political committee" narrowly in order to avoid unconstitutional overbreadth. The Court held that only groups "under the control of a candidate" or those whose "major purpose is the nomination or election of a candidate" may be subject to the burdensome registration, recordkeeping, and disclosure obligations of political committees. *Id*. at 79.

74.     The Supreme Court reaffirmed this limit in *FEC v. Massachusetts Citizens for Life, Inc*., 479 U.S. 238 (1986). The Tenth Circuit has likewise applied it in multiple cases. In *Colorado Right to Life Committee v. Coffman*, 498 F.3d 1137 (10th Cir. 2007), the court struck down Colorado's definition of political committee for capturing groups whose major purpose was not electioneering, stating that insubstantial spending triggers are "an unacceptable proxy for the major purpose test." *Id*. at 1153. In *New Mexico Youth Organized v. Herrera*, 611 F.3d 669 (10th Cir.

2010), the court held that New Mexico could not impose PAC-style burdens on nonprofits whose primary mission was not candidate advocacy, finding the statute unconstitutional under *Buckley*. While New Mexico defined "political committees" to include groups who spent more than $500 on political campaign activity, the Court reaffirmed that "[t]o automatically classify such organizations as political committees contradicts the Supreme Court's repeated admonition that only organizations that have 'the major purpose' of electing or defeating a candidate may be forced to register as political organizations." *Id.* at 679.

75.    The Albuquerque City Charter and the 2025 Rules promulgated by the City Clerk define an MFC as any group that raises or spends more than $250 in support of or opposition to a candidate or ballot measure.

76.    This definition forces groups whose major purpose is not electioneering — including nonprofits, civic associations, labor unions, neighborhood coalitions, and other issue-advocacy organizations — who meet this arbitrarily low dollar threshold to register as MFCs, open and close new campaign bank accounts each election, file monthly reports, and comply with extensive disclaimer and donor disclosure requirements.

77.    By sweeping in organizations that engage in only incidental electoral activity, the City's definition of MFC's violates the constitutional limit established in *Buckley*, as reaffirmed by the Supreme Court and the Tenth Circuit.

78.    The City's MFC definition and regulatory regime therefore violate the *Buckley* "major purpose test," and are unconstitutionally overbroad and burdensome under the First Amendment.

<u>Count II – Vagueness and Overbreadth of the Disclaimer Requirements for Donors</u>
(First and Fourteenth Amendments – Due Process and Free Speech)
(All Plaintiffs as to all Defendants)

79.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

80.    The Clerk's Rules require that all campaign materials distributed by persons—other than candidates or MFC's supporting or opposing candidates—making Independent Expenditures or Coordinated Expenditures disclose the identity of the "top 5 donors" and the top two "secondary donors" contributing $1,000 or more. The term "secondary donor" is not defined in the City Charter nor in the Clerk's Rules. The Clerk's disclaimer rules are vague, ambiguous, overbroad, and contradict the City Charter.

81.    If a person that is not an MFC makes an independent or coordinated expenditure, the Clerk's Rules would require that person (entity) to disclose its top five donors and presumably its top two secondary donors regardless of whether the entity's donors earmarked their donation for political activity. Worse still, an entity such as the Plaintiffs in this case would have to disclose donors who may have specifically forbidden the use of the donation for political activity and then require that donor to reveal to Defendants the identify of its top two donors. Even if the Clerk's Rules regarding top five or secondary two donors were limited in their application to MFCs, the top five donors to an MFC might be compelled to disclose their top two donors without limitation. The Clerk's Rules are not narrowly tailored and fail the Tenth Circuit's exacting and/or strict scrutiny standard. *Sampson v. Buescher*, 625 F.3d 1247, 1255 (10th Cir. 2010); *Lakewood Citizens Watchdog Grp. v. City of Lakewood*, 2021 WL 4060630 (D. Colo. Sep 07, 2021); *Citizens for Responsible Government v. Davidson*, 236 F.3d 1174 (10th Cir. 2000).

17

82.     The top five donor disclosure rule requires persons to list the "persons or entities making the largest aggregate donations to the entity during the twelve (12) month period before the date of such communication." Exhibit 1, Part 18 (B)(1)(b). The Clerk's Rules became effective in February 2025. As such, persons making independent or coordinated expenditures were not given adequate notice to modify their fundraising or warn large donors of possible disclosure in the months preceding February 2025.

83.     Moreover, the Clerk's Rules' ambiguity denies fair notice of what the law requires. MFCs and organizations making independent or coordinated expenditures cannot reasonably determine which donors must be disclosed without guessing, and the wrong guess exposes them to civil fines of up to $500 per violation per day and even potential misdemeanor liability.

84.     The vagueness also invites arbitrary and discriminatory enforcement, giving the City Clerk and the Board of Ethics standardless discretion to decide, after the fact, whether a committee's disclaimer satisfies the donor disclosure requirements.

85.     Because the disclaimer obligations operate directly in the realm of core political speech, including speech supporting or opposing ballot questions, precision and clarity are constitutionally required. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (laws must give "fair notice" and avoid arbitrary enforcement); *FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012) (void for vagueness doctrine requires clear notice of what is prohibited); *Buckley v. Valeo*, 424 U.S. 1, 76–77 (1976) (vague disclosure rules chill speech and association); *Citizens United v. FEC*, 558 U.S. 310, 366 (2010) (disclosure rules must be narrowly tailored). *See also Wyo. Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023); *Independence Inst. v.*

*Williams*, 812 F.3d 787 (10th Cir. 2016); *Lakewood Citizens Watchdog Grp. v. City of Lakewood*, 2021 WL 4060630 (D. Colo. Sep. 7, 2021).

86.    The City Clerk's donor disclosure/disclaimer requirements are therefore unconstitutionally vague under the First and Fourteenth Amendments. They chill protected political expression, burden associational rights, and fail to provide fair notice or adequate enforcement standards.

Count III: Ultra Vires / Abuse of Authority
(All Plaintiffs as to all Defendants)

87.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

88.    The City of Albuquerque's campaign finance system is governed by the City Charter, which establishes the authority of the City Clerk and the Board of Ethics and Campaign Practices.

89.    The Charter defines "campaign materials" as only those communications used by candidates and MFCs. It does not extend that definition to other persons, individuals, or organizations.

90.    The Charter further limits registration, disclosure, and disclaimer obligations to candidates, candidate committees, and MFCs.

91.    Despite these limits, the Clerk's Rules expand their scope to cover "all individuals, entities, and organizations governed by, or subject to, the provisions of the City Charter and State Law."

92.    Through the disclaimer requirements and scope provision, the Clerk has unilaterally imposed obligations on groups and persons outside the Charter's definition of "campaign materials" and beyond the Charter's grant of authority.

93.    Administrative officers may not legislate beyond the authority conferred by their enabling statute or charter. Where they do so, their rules are ultra vires, void, and unenforceable. *See City of Arlington v. FCC*, 569 U.S. 290 (2013); *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014); *Stennis v. City of Santa Fe*, 2008-NMSC-008; *State ex rel Coffin v. McCall*, 1954-NMSC-076, 58 N.M. 534.

94.    By expanding the scope of campaign finance regulation to all individuals and entities "subject to state law," and by imposing disclaimer obligations beyond those authorized by the Charter, the City Clerk has abused his authority and acted ultra vires.

## RELIEF REQUESTED

95.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

96.    Plaintiffs respectfully request this Court to grant the following relief:

A.    Declare that the City Charter's definition of Measure Finance Committee is unconstitutional because it violates the *Buckley* "major purpose test," as reaffirmed in *Colorado Right to Life Committee v. Coffman* and *New Mexico Youth Organized v. Herrera*;

B.    Declare that the City of Albuquerque's Clerk has exceeded his authority under the City Charter;

C.    Declare that the City Clerk's Rules regarding disclaimer requirements are unconstitutional because they are overbroad, vague, and ambiguous and they contradict the City Charter;

D.    Enjoin Defendants from enforcing the MFC registration, reporting, disclosure, and disclaimer requirements against Plaintiff and any other group whose major purpose is not the nomination or election of candidate;

E.    Award Plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

F.    Such other relief as the Court may deem proper.

Respectfully submitted,

SARA BERGER LAW

*/s/ Sara Berger*
Sara Berger
P.O. Box 90504
Portland, OR 97290
(971) 322-6458
sara@swnonprofitlaw.com

DAVIS LAW NEW MEXICO

*/s/ Nicholas T. Davis*
Nicholas T. Davis
Davis Law New Mexico
1000 Lomas Blvd. NW
Albuquerque, NM 87102
(505) 242-1904
nick@davislawnm.com

*Counsel for Plaintiffs Center for Civic Action, ProgressNow New Mexico, and Semilla Action*

## VERIFICATION

I, Oriana Sandoval, declare as follows:

1. I am the Chief Executive Officer of Center for Civic Action ("CCA").

2. I have personal knowledge of CCA and its activities, including those set out in the fore-going Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning and its planned activity are true and correct.

Executed on November $\underline{10}$ , 2025.

_Oriana Sandoval_
Oriana Sandoval

22

## VERIFICATION

I, Alissa Barnes, declare as follows:

1. I am the Executive Director of ProgressNow New Mexico ("PNNM").

2. I have personal knowledge of PNNM and its activities, including those set out in the fore-going Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning and its planned activity are true and correct.

Executed on November ___10___, 2025.

Signed by:

F01C0731D91A46B...

Alissa Barnes

## VERIFICATION

I, Elizabeth Cuna, declare as follows:

1. I am the Executive Director of Semilla Action.

2. I have personal knowledge of Semilla Action and its activities, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning and its planned activity are true and correct.


Executed on November ___10th___, 2025.



Elizabeth Cuna

24