# 2025 RULES BY
# THE ALBUQUERQUE CITY CLERK



# FOR THE
# ELECTION CODE AND THE
# OPEN AND ETHICAL ELECTION CODE
# OF THE
# CITY CHARTER

**OFFICE OF THE CITY CLERK**

**P.O. Box 1293**

**ALBUQUERQUE, NM**

**87103**

**EXHIBIT 1**

**LEFT INTENTIONALLY BLANK**

# Table of Contents

Part 1 Definitions and Computation of Time. ................................................................... 4

Part 2 Authority and Construction. ................................................................................... 4

Part 3 Contributions. ......................................................................................................... 5

Part 4 In-Kind Contributions. ........................................................................................... 8

Part 5 Expenditures. ......................................................................................................... 10

Part 6 Coordinated Expenditures. ................................................................................... 11

Part 7 Independent Expenditures. ................................................................................... 13

Part 8 Measure Finance Committees. ............................................................................. 15

Part 9 Campaign Financing. ............................................................................................ 16

Part 10 Campaign Finance Reporting System. ............................................................... 17

Part 11 Fines and Fees. ................................................................................................... 18

Part 12 Petitions. ............................................................................................................. 18

Part 13 Public Financing Program/OEEC. ..................................................................... 21

Part 14 Use of the Electronic Petition Site and Electronic Qualifying Contributions Site. ................................................................................................................................. 35

Part 15 Rehabilitation of Petition Signatures and Qualifying Contributions. ................. 36

Part 16 Withdrawal of Candidacy. .................................................................................. 38

Part 17 Write-In Candidates. ........................................................................................... 38

Part 18 Disclaimers. ........................................................................................................ 39

Part 19 Complaint Process. ............................................................................................. 43

Part 20 Runoff Election ................................................................................................... 43

Part 21 Effective Date. .................................................................................................... 44

Part 22 Forms. ................................................................................................................. 45

# Part 1      Definitions and Computation of Time.

1.      "**Board of Ethics**" means the Board of Ethics and Campaign Practices.

2.      "**City Clerk**" means the City Clerk for the City of Albuquerque.

3.      "**Designated Representative"** means the individuals the Candidate has named on the official form, provided to the Office of the City Clerk, to act on behalf of the Candidate for required interactions with the Office of the City Clerk such as, trainings, weekly drops of petitions and Qualifying Contributions, etc. The Candidate is responsible for the acts and interactions of these designees.

4.      "**Disclaimer**" is a **disclosure** and means a statement identifying the person(s), organization(s), or political committee(s) who paid for, or is otherwise responsible for funding or authorizing campaign materials. It includes any notice required to ensure transparency about the origin, financial backing, and authorization of such materials.

5.      "**EC**" means the Election Code, Article XIII of the City Charter of the City of Albuquerque.

6.      "**MFC**" means a Measure Finance Committee as defined in the Election Code, Article XIII of the City Charter of the City of Albuquerque.

7.      "**OEEC**" means the Open and Ethical Elections Code, Article XVI of the City Charter of the City of Albuquerque.

8.      "**Verify"** means the process through which the Office of the City Clerk substantiate the Qualifying Contribution form or petition form against the requirements for each.

9.      **"Computation of Time:"** When the EC, OEEC, or these rules require an act to be done within a period of time, computation of time shall be governed by NMSA 1978, Section 1-1-22, and all references to "days" are to calendar days except when the EC, OEEC, or these rules expressly provide otherwise.

# Part 2      Authority and Construction.

A.      **Authority**. Pursuant to the authority granted by the City Charter of the City of Albuquerque, the Office of the City Clerk issues the following rules for its conduct, and for interpretation and enforcement of the Election Code (Art. XIII) and the Open and Ethical Elections Code (Art. XVI) of the City.

B.    **Conflicts**. If these rules conflict with the provisions of the City Charter or State Law, the provisions of the City Charter or State Law shall prevail.

C.    **Scope**. These rules apply to candidates, Measure Finance Committees, candidate committees, and all individuals, entities, and organizations governed by, or subject to, the provisions of the City Charter and State Law. Unless otherwise specified, terms used in these rules shall have the same meaning as defined in the City Charter.

# Part 3    Contributions.

A.    The term "Contribution" includes:

1.    A **gift, subscription, loan, advance or deposit of money, or anything of value** made for the purpose of influencing the nomination or election of any person to elected office or for the purpose of liquidating any campaign deficit of a candidate, except that a loan of money to a candidate by a financial institution in this State made in accordance with applicable banking laws and regulations and in the ordinary course of business is not included;

2.    **A contract, promise or agreement, expressed or implied**, whether or not legally enforceable, to contribute for such purposes;

3.    **Funds received by a candidate or a Measure Finance Committee** that are transferred to the candidate or committee from another political committee or other source; or

4.    The **payment, by any person other than a candidate or a Measure Finance Committee, of compensation** for the personal services of other persons that are provided to the candidate or committee without charge for any such purpose.

B.    The term "Contribution" does not include:

1.    The **value of services provided** without compensation by individuals who volunteer their time on behalf of a candidate or Measure Finance Committee, except that professional services are **included in the term "Contribution"** as set forth in these rules;

2.    **Unreimbursed travel expenses incurred by an individual** in the course of providing voluntary personal services to a candidate and paid for by that individual, if the **cumulative amount of these expenses does not exceed $350** with respect to any election;

3.    Unreimbursed campaign-related travel expenses incurred and paid for by the candidate or the candidate's immediate family;

4.      Documents created, obtained, or maintained by a political party for the general purpose of party building, whether in printed or electronic form, including:

       a.      Party platforms;

       b.      Single copies of issue papers;

       c.      Information pertaining to the requirements of the City Charter;

       d.      Lists of registered voters and voter identification information; or

       e.      Documents provided to a candidate who is a member of that party.

5.      **Compensation paid by a political party** committee to its employees for the following purposes:

       a.      **Recruiting and overseeing volunteers** for campaign activities involving three (3) or more candidates;

       b.      **Coordinating campaign events** involving three (3) or more candidates; or

       c.      **Campaign training sessions** provided to three (3) or more candidates.

6.      Costs paid for by a political party committee in connection with a campaign event at which **three (3) or more candidates** are present;

7.      The **use or distribution** of any **communication** obtained by the candidate for a **previous election** and fully paid for during that election;

8.      Activity or communication designed to encourage individuals to register to vote or to vote if that activity or communication does not mention a clearly identified candidate;

9.      A candidate's own services and property, other than cash;

10.     The **use of a dwelling unit** and residential premises incidental thereto for any campaign purpose and the provision of refreshments and entertainment in connection with such use;

11.     The **services** of the person who is performing the duties of the **candidate's treasurer**; or

12.     The **use of vehicles** for any campaign purpose **other than** in connection with the performance of a **commercial or professional service**.

C.      **Prohibited Contributions**

a. No person may contribute in the name of another person or knowingly permit their name to be used to contribute.

b. No person may knowingly accept a Contribution made by one person in the name of another.

c. Reports submitted to the City Clerk must accurately identify the actual contributor.

D. **Legal Fees as Contributions**

1. The payment or waiver of legal fees **does not constitute** a Contribution when it is for either of the following:

a. Legal advice to a candidate on compliance with campaign laws or regulations; or

b. Legal representation of a candidate or candidate committee in any legal action that is:

i. Reasonably related to the campaign or election, and

ii. Where the candidate or committee has been named **as a defendant**.

2. These Contributions must be disclosed but are **not subject to any Contribution limits** in the Charter.

E. **Public Funds Eligibility.** Candidates seeking eligibility to receive public funds or become Participating Candidates under the OEEC should refer to **the Public Financing Program Part 13** of these rules for additional guidance on permissible and prohibited Expenditures specific to applicant and Participating Candidates.

F. **Electronic Contribution Portal**

1. PayPal, ActBlue, Winred or any other such electronic Contribution portal may be used by candidates to collect Contributions or Seed Money as a **passthrough**.

2. Funds must be deposited into the candidate's bank account and recorded in the candidate's campaign finance disclosure report.

3. If a donation is subject to a card processing fee, only the net amount deposited into the candidate's account after the fee is deducted needs to be reported.

G. **State Campaign Finance Accounts**

1. Individuals with State Campaign Finance Accounts **may not use those funds** to make Expenditures in any City election.

2. State Campaign Finance Account funds **cannot be transferred** to a City Campaign Finance Account.

# Part 4    In-Kind Contributions.

A. **"In-Kind Contributions:"**

1. Are goods and services, other than money, donated or provided to a campaign **at no cost or at a discount of 20% or more** from fair market value. The following are **examples** of In-Kind Contributions and are **not an exhaustive list**:

a. A person purchases campaign signs for distribution by the campaign and is not reimbursed by the campaign;

b. A person pays for some of the candidate's advertising in a community newspaper and is not reimbursed by the campaign;

c. A copy shop owner provides the campaign with a 20% discount on printing services;

d. A **volunteer buys paint and plywood to make signs** for a candidate and is not reimbursed by the campaign;

e. The owner of a local business provides the campaign, free of charge, some labor of their paid staff members to work for the campaign on company time;

f. A commercial **vendor extends credit to the campaign** under terms that are not substantially similar to the terms extended in the ordinary course of business to nonpolitical customers.

B. **Monetary Contributions vs. In-Kind Contributions.** The allocation of funds to a candidate, campaign, or MFC, **even if the contributor intends that those funds be used to pay for specific goods, are monetary Contributions** and must be reported as such, and not as In-Kind Contributions.

C. **Report Fair Market Value.** If a campaign or MFC receives an In-Kind Contribution, the campaign must **report the fair market value** of the Contribution, which is what the goods or services would have cost the campaign if it had paid cash for the donated goods or services. If the campaign received a discount of **20% or more** on goods or services, the discount **is the amount of the In-Kind Contribution**.

D. **Candidate In-Kind Contributions to Their Own Campaign.** A candidate may make In-Kind Contributions to their own campaign; however, the In-Kind Contribution **must be reported** in the financial disclosure report and will **count against** the individual In-Kind Contribution limits and for Publicly Financed Candidates, the In-Kind **Contribution aggregate limit**.

E.      **Timing of Reporting In-Kind Contributions**.

1.      In-Kind Contributions must be reported:

a.      Through the Campaign Finance Reporting System as soon as the goods or services are received.

b.      In the financial disclosure report following receipt of the In-Kind Contribution.

2.      Candidates, campaigns, MFCs, and contributors may not avoid reporting by delaying billing or invoicing for In-Kind Contributions.

F.      The individual In-Kind Contribution Limit

1.       Publicly Financed Candidates for all covered offices is **$2,500**. Aggregate limits are based on the specific office and will be posted online by February 1 of an election year.

2.      Privately Financed Candidates is the individual Contribution limit. There is no aggregate limit for Privately Financed Candidates.

G.      All In-Kind Contribution limits **reset in a runoff election**.

H.      **Other In-Kind Contributions – Additional Examples**

1.      ***Food, Drink, and Office Supplies***. Contributions of food, drinks, and/or office supplies that have a cumulative fair market value of one hundred dollars **($100.00) or more per election cycle**, must be reported as In-Kind Contributions.

2.      ***Volunteer Services vs. Paid Assistance***. Individuals are permitted to provide their services for free to the campaign as volunteers, except that professional services must be reported as In-Kind Contributions. However, if the volunteer provides their services with the knowledge of their employer during their paid work-time, then the employer has contributed to the campaign and that time must be reported as an In-Kind Contribution from the employer in the amount that the volunteer would have **been paid by their employer** for that time.

3.      ***Polling and Research.*** If an individual or organization provides a campaign or MFC with polling and research at no cost, or at a **discount of 20%** or more, that is an In-Kind Contribution that must be disclosed.

4.      ***Services Contributed Through a Candidate's Business Entity***. If a candidate has a **business entity**, and that **entity provides goods or services** to the campaign without charge, or at a 20% or more discount, those Contributions are In-Kind Contributions that must be disclosed.

5.      ***Coordinated Expenditures***. Coordinated Expenditures must be reported as In-Kind Contributions.

6. **Professional services**, such as accounting, attorney, consulting, and similar services provided directly from the professional to the candidate, are permitted but must be disclosed.

a. **If a professional provides professional services** within the scope of their profession free of charge or at a 20% or more discount, that is an In-Kind Contribution. However, if a professional volunteers their time providing services outside of the scope of their profession, that is not an In-Kind Contribution. By way of example only:

i. If a **graphic designer** provides a campaign with **free design** services, that is an In-Kind Contribution that must be reported and will **count against In-Kind** Contribution limits.

ii. If **a graphic designer volunteers** their time assisting a **candidate with speech** preparation, that is volunteer work, it **does not need** to be reported, and **does not count** against In-Kind Contribution limits.

# Part 5    Expenditures.

A. **Definition of Expenditure. In addition to the definition included in EC, Section 2 an "Expenditure" means:**

1. A payment;

2. A forgiveness of a loan;

3. A payment of a loan by a third party; or

4. An enforceable promise to make a payment.

B. An **Expenditure** is made on the earlier of the date the payment is made or on the date consideration, if any, is received.

C. Candidates may **not make Expenditures of campaign funds to pay civil penalties, fines, or forfeitures** to the Board of Ethics.

D. **Prohibition on Personal Use of Campaign Funds**. Expenditures of campaign funds for **personal use is prohibited**. Personal use is any use of campaign funds of a candidate (or former candidate) to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate's campaign or responsibilities as an officeholder.

E. **Legal Fees as Expenditures**. The payment of **legal fees to advise a candidate on compliance with campaign laws or regulations, and payment of legal fees or court costs** to represent a candidate or candidate committee in any action reasonably related to the campaign or election in which the candidate or

committee has been named as a defendant or respondent, are Expenditures that must be disclosed, but are not subject to any Expenditure limits in the Charter.

F.    Candidates who seek eligibility to receive public funds or become Participating Candidates under the OEEC should **refer to the Public Financing Program Part 13** for additional guidance on Expenditures under the OEEC.

G.    **Disclosure Requirements for Campaign Managers, Consultants, and Third-Party Organizers**. If a candidate or committee hires campaign managers, consultants, or third-party organizers to manage or coordinate election or committee activities, the candidate or committee must provide a line-item disclosure of all Expenditures made on behalf of the campaign. This disclosure must include:

a.    The name, address, and role of any campaign manager, consultant, or third-party organizer;

b.    The **type and quantity** of goods purchased (e.g., campaign literature, office supplies, staff payments);

c.    The **name and address** of any business, vendor, or person to which payment was made; and

d.    A description of any services produced or procured and any **goods purchased related to the secondary services**.

# Part 6    Coordinated Expenditures.

A.    An Expenditure is a "**Coordinated Expenditure**" and shall constitute a Contribution to the candidate when:

1.    An Expenditure is made to **Promote or support** the nomination **or** election of a candidate, or **Oppose or defeat** the candidate's opponent(s); and

2.    The Expenditure is made in **cooperation, consultation, or in concert** with, or at the **request or suggestion of, the candidate**.

B.    As used within this subsection, the term "candidate" includes a committee authorized by the candidate to promote or support their election, and all agents of the candidate or the authorized committee.

C.    An Expenditure is presumed to be made **in cooperation, consultation, or in concert with, or at the request or suggestion of a candidate**, when:

1.    **A candidate and the creator, producer or distributor** of a communication, or the person paying for that communication, **discuss the content**, timing, location, mode, intended audience, volume of distribution or frequency of placement **of that communication**; and the candidate participates in making any decision regarding the content, timing, location, mode,

intended audience, volume of distribution, or frequency of placement of the communication;

2.      The Expenditure is made by any person who, **during the twelve months preceding the Expenditure**, has been the candidate's treasurer or an officer of the candidate's authorized committee, has had a paid or unpaid decision-making position in the candidate's campaign, or has received any campaign-related compensation or reimbursement from the candidate;  or

3.      The candidate has directly shared the candidate's campaign plans, activities, polling, research, or needs with the person making the Expenditure for the purpose of facilitating a payment by that person on a communication to voters to promote or support the candidate.

D.      **The candidate or person making the Expenditure may rebut the presumption by submitting sufficient contrary evidence.**

E.      **Candidate Requests Not to Spend.** A candidate is allowed to ask others **not to spend money in support** of their candidacy. A request by a candidate that a party committee, political action committee, Measure Finance Committee, or other person not make any Expenditure to promote or **support the candidate, or oppose or defeat** the candidate's opponent(s) may not constitute cooperation or coordination; however, such a request does not mean that a subsequent Expenditure is not a Coordinated Expenditure. The City Clerk shall **determine cooperation or coordination** based upon the totality of the circumstances.

F.      **Circumstances That Do Not Presume Coordination.**

1.      An Expenditure will not be presumed to have been made in cooperation, consultation or in concert with, or at the request or suggestion of a candidate, solely because:

a.      The person making the Expenditure **has obtained** a photograph, biography, position paper, press release, logo, or similar material about the candidate **from a publicly available source**;

b.      The person making the Expenditure **has previously provided advice** to the candidate on suggested communication strategies, budgets, issues of public policy, or other campaign plans or activities;

c.      The person making the Expenditure makes an Expenditure in response to a general, non-specific request for support by a candidate, **provided that there is no discussion, cooperation, or consultation** with the candidate prior to the Expenditure regarding the details of the Expenditure;

d.      The person making the Expenditure **has also contributed** to the candidate, or has discussed with the candidate their campaign plans or activities as part of the candidate's solicitation for a donation;

e.      The Expenditure is **made by a for-profit or non-profit organization for invitations, announcements, food and beverages** and similar costs associated with an event to which the candidate has been invited by the organization to make an appearance before the organization's members, employees, shareholders and the families thereof; or

f.      The Expenditure is made by an **individual who spends $100 or less** for costs associated with a sign that is lettered or printed individually by hand or that reproduces or replicates a candidate's campaign-related design or graphic.

G.      **Correct Reporting of Coordinated Expenditures: Participating Candidates** may partake in Coordinated Expenditures**,** but any such Coordinated Expenditures **must be reported** as set forth in the EC, OEEC, and these rules.

# Part 7      Independent Expenditures.

A.      Definition of Independent **Expenditures: For the purposes of this Part, an "Independent Expenditure" is presumed when an Expenditure is:**

1.      Spent on Express Advocacy or Electioneering Communications that are made **without the cooperation**, consultation or coordination with, or at the request or suggestion of, a candidate, a candidate's authorized committee, or an agent thereof.

2.      Independent Expenditures **may include materials already distributed** to the public or broadcast by a candidate, the candidates authorized committee, or an agent thereof.

*Note*: Independent Expenditures may consist of materials previously made public by the campaign without implying coordination with the campaign.

B.      **Rebuttable presumption.** A person presumed under this Part to have made an Independent Expenditure **may rebut the presumption by**:

1.      Filing a signed **written statement** with the Board of Ethics within **48 hours** of making the Expenditure stating:

a.      The cost was not an Independent Expenditure, supported by any additional evidence the person chooses to submit; or

b.      That the Expenditure was made in cooperation, consultation or coordination with, or at the request or suggestion of, a candidate, a candidate's authorized committee or an agent thereof, supported by any additional evidence the person chooses to submit.

C.    **Report required; content; rules.** A person, party committee, political committee or political action committee, or Measure Finance Committee Shall register as a committee and file a report with the City Clerk in compliance with EC, Section 4 of the City Charter when they have made any Independent Expenditure in excess of **$250** during:

    1.    Any one candidate's election; or

    2.    In **support or opposition** of any one issue before the voters.

D.    **Reports required by this subpart must include:**

    1.    An itemized account of each Expenditure, including:

        a.    The **date and purpose** of each Expenditure; and

        b.    The **name of each payee** or creditor.

    2.    Whether the Expenditure is in support of, or in opposition of, a named candidate.

    3.    A statement under penalty of perjury, under oath or affirmation explaining whether the Expenditure is made in:

        a.    Cooperation, consultation or in concert with; or

        b.    At the request or suggestion of, a candidate or an authorized committee or agent of a candidate.

E.    Ongoing Reporting. A committee that has registered and filed a report as required by this section, and in compliance with, EC, Section 4, shall **continue to file** financial disclosure reports **until:**

    1.    The committee has alerted the Office of the City Clerk that the committee has been dissolved or no longer exists; and

    2.    The **bank account has been zeroed out**, as required in EC, Section 4(d)(2)(F).

F.    **Exclusions.** An Independent Expenditure **does not include**:

    1.    An Expenditure made by a person in cooperation, consultation or in concert with, or **at the request or suggestion of, a candidate, a candidate's political committee**, or their agents;

    2.    A **telephone survey** that meets generally accepted standards for polling research and that is **not conducted for the purpose** of changing the voting position of the call recipients or discouraging them from voting; or

    3.    A telephone call naming a clearly identified candidate that:

        a.    Identifies an **individual's position on a candidate**, ballot question or political party; or

b.     Encourages the **individual to vote**, as long as the call contains no advocacy for or against any candidate; or

c.     A **voter guide** consisting primarily of candidate responses to surveys and questionnaires and that contains **no advocacy for or against** any candidate.

G.     Allegations and Complaints: Persons alleging that an Independent Expenditure is a Coordinated Expenditure **may file a Complaint** with the Office of the City Clerk.

# Part 8     Measure Finance Committees.

A.     An MFC includes:

1.     Any separate or segregated fund established by any corporation, membership organization, cooperative, labor organization, or other organization **whose purpose is to initiate or influence a campaign** or election; and

2.     Any organization, including any corporation or association, whose major purpose is **initiating or influencing a campaign** or election and that receives Contributions or makes **Expenditures aggregating more than $250** for that purpose;

3.     Any organization whose major purpose is not influencing candidate or ballot measure elections but that receives Contributions or makes Expenditures aggregating **more than $250** for the purpose of influencing the **nomination or election of any candidate or political office**.

B.     **Requirements for Advocacy or Charitable Organizations.** Advocacy, charitable, or other organizations that are interested in **raising and spending money** to influence the election of a candidate, a ballot question or referendum are **required to form an MFC** for that purpose, and file campaign finance disclosure reports with the City Clerk.

C.     **Financial Activity Exemption.** If an organization's **only financial activity** is to contribute to an MFC that will disclose the Contribution in a campaign finance disclosure report, the organization **does not** have to register with the City Clerk as an MFC. However, if the organization raises funds for the purpose of contributing to an MFC, **rather than** from the organization's general treasury, it has received Contributions and must file as an MFC **if the Contributions exceed $250**.

D.     **Individual Registration Requirement.** An individual who raises or spends more than **$250** to initiate or influence an election, ballot question, or referendum **must register** as an MFC.

1.      Exception: if an individual uses ***their own funds*** to contribute to an MFC, they **do not qualify** as an MFC, provided that the funds used to make the Contribution were not themselves, a Contribution from another source.

E.      Registration and Reporting Requirements. MFCs are required to:

1.      File campaign finance disclosure reports in accordance with EC, Section 4.

2.      Register as an MFC with the Office of the City Clerk, **once $250 has been raised or spent to support or oppose a candidate or ballot measure**.

a.      All campaign activity leading up to the $250 threshold must be reported on the initial report.

F.      **Bank Account Requirement:** MFCs are required to maintain **one, and only one** bank account in accordance with the requirements in EC, Section 4. If applicable, this account must be **separate** from any general account of the organization.

G.      **Contributions and Expenditures**. The MFC is required to report Contributions and Expenditures made for the purpose of initiating or influencing a candidate's election, a ballot question, or a referendum. If funds are **used from the organization's general treasury**, those amounts must be reported as a Contribution from the organization to the MFC.

H.      **Content of Campaign Finance Disclosure Reports**. Campaign finance disclosure reports, must include:

1.      **An itemized account** of all Contributions, including the name and address of each contributor, and the contributor's occupation and employer.

2.      Every Expenditure made to support or oppose a candidate or ballot question or referendum must be reported including Expenditures for the collection of signatures for a direct initiative.

I.      **Staff Compensation and In-Kind Contributions.** If the MFC uses paid staff to influence a candidate's election, a ballot question, or a referendum. The amount of compensation for their staff's time must be reported as an Expenditure. Goods or services, including **donated staff time,** the MFC receives from other organizations or individuals must be reported as **In-Kind Contributions**.

# Part 9      Campaign Financing.

A.      **Bank Statements**

1.      **Candidates and Measure Finance Committees** are **required to submit** campaign finance disclosure reports in accordance with EC, Section 4.

2.      Additionally, Candidates and Measure Finance Committees are **required to submit monthly bank statements** to the Campaign and Election Auditor by the 2nd Monday of each month, reflecting the previous month's activities.

    a.      These bank statements can be submitted:

        i.   Along with the financial disclosure report;

        ii.  **Submitted electronically** via the Campaign Finance Reporting System; or

        iii. **Emailed directly** to the Campaign and Election Auditor.

3.      **Monthly bank statements** shall be submitted **each month** for the duration of the election **as long as the campaign or committee remains active and files** financial reports. Beginning on the second Monday in October, the **transaction** history for the account shall be **submitted to correlate** with the reporting schedule.

B.      **Loans**

    1.      Publicly Financed Candidates:

        a.      **Applicant Candidates** for public financing may take out a loan, or the candidate may give their campaign a loan during the exploratory period.

        b.      Once a candidate is a Participating Candidate and has received a distribution from the City, the **candidate may no longer accept or hold any loans**. This means that if a Participating Candidate receives a loan during the exploratory period, **it must be repaid with Seed Money** prior to any distribution from the City. Applicant Candidates **may not charge interest** on a loan given to their own campaign, nor may they pay interest on a loan.

    2.      **Privately Financed Candidates** may take out a loan, or a candidate may give their campaign a loan for an election cycle. **The loan must be disclosed as well as any payments** made on the loan in accordance with EC, Section 4. A candidate may not charge interest on a loan given to their own campaign. A candidate **may not raise funds past election day** to repay any outstanding debt from the previous election.

C.      **Loans are considered a Contribution**, subject to the limitations set forth in Part 3, Section A(1.), and do count against a candidate's individual and aggregate, if any, Contribution threshold.

# Part 10    Campaign Finance Reporting System.

A.    **The Office of the City Clerk will grant access to the Campaign Finance Reporting System** to any candidate or Measure Finance Committee that has met the requirements to be considered a candidate or a Measure Finance Committee.

    1.    The candidate and committee, or their designated representative, must complete training on how to use the Campaign Finance Reporting System **within 10 days of registering**.

    2.    A candidate or committee who chooses to forgo the available training will be required to sign a form detailing such.

B.    The Office of the City Clerk and the Campaign and Election Auditor are available to assist candidates or committees with questions regarding their filings or use of the system **during normal business hours**.

C.    **Campaign finance reporting generally** allows **for a full week** between the end of a reporting period and when the report is due. The Office of the City Clerk encourages candidates and committees to timely file reports.

D.    **At the end of the election cycle**, the Campaign and Election Auditor will:

    1.    **Verify that all required reports have been submitted** by the candidate or committee; and

    2.    That the account has been **zeroed out and funds disposed** of in accordance with EC, Section 4.

E.    At that time, the Office of the City Clerk will terminate the candidate or committee's access to the Campaign Finance Reporting System. **Should a candidate or a committee fail to comply with the provisions in EC, Section 4** by the end of the election cycle, but the failure to comply is of *de minimus* value, the City Clerk may terminate the candidate or committee's access to the Campaign Finance Reporting System.

# Part 11    Fines and Fees.

Fines and fees are imposed in accordance with the rules of the Board of Ethics and Campaign Practices.

# Part 12    Petitions.

A.    Candidates for Mayor and for City Council must submit a qualifying number of petition signatures to be eligible for the ballot in a regular local election.

    1.    Mayoral candidates must **submit 3,000 signatures** of registered voters in the City of Albuquerque.

2.      City Council candidates **must submit 500 signatures** of City registered voters in the district that the candidate desires to represent.

3.      Signatures may only be **collected during the prescribed timeframe** for the office being sought as outlined in Municipal Elections Ordinance, Section 2-4-1 through - 16 ROA 1994.

B.      Signatures may only be **collected on the prescribed form** designated by the City Clerk, or on the electronic platform provided by the City Clerk: **petitions.cabq.gov**

1.      Petitions.cabq.gov may be used as the sole means of collection of signatures, but the **Office of the City Clerk recommends against this**:

a.      The website should be used as an **additional tool** for collection.

b.      **Connection issues, user errors**, or any other disruptions to the site or registration database could cause the website to function at **suboptimal levels** at any given time.

c.      The Office of the City Clerk *will not* add additional time to the Qualifying Period or operate on non-business days due to issues with the website as it is **an additional tool** rather than the sole means for collection of signatures.

2.      Signatures are accepted by the website are **automatically verified**. However, the website **cannot account for any duplicates** that may appear in the paper receipt collection.

a.      If a signatures from a paper receipt was previously accepted from an individual who later signs on the website, that **website signature will be rejected** by the Office of the City Clerk when the **two lists are merged**.

C.      Candidates may be **held responsible for violations** of these rules by either paid or unpaid (volunteer) circulators.

D.      Candidates must **submit petition signatures** for the City Clerk's verification **every Tuesday** during the prescribed petition gathering period. **Weekly submissions** can be made by the candidate or the candidate's designated representative. The Office of the City Clerk will **designate a time for these appointments** during each cycle.

E.      The Office of the City Clerk will **verify petitions throughout the petition gathering period** and will update candidates regarding the number of verified and rejected petitions on a regular basis. For a petition to be verified it must:

1.      Be legible;

2.      Have all sections completed, including date, signatory's name, address and signature;

3.      Be a registered voter;

a.      For mayoral candidates, a registered voter is a person registered to **vote with an address within the City of Albuquerque**.

b.      For City Council candidates, a registered voter is a person within the **applicable City Council district** for which the candidate is running.

4.      Be made during the applicable petition period; and

5.      Be obtained through efforts made with the knowledge and approval of the candidate and **comply with all requirements in the EC**.

F.      Pursuant to NMSA 1978, Section 1-1-7.2, a voter who signs a petition shall **sign one and only one petition for the same office** unless more than one candidate is to be elected to that office. The Office of the City Clerk **will not reject petition signatures** from voters who have **signed more than one petition** for the same office. It is the candidates' responsibility to **inform the voters** of this requirement.

G.      Candidates will be given the opportunity to rehabilitate a rejected signature. Procedures for rehabilitation are provided in Part 15 of these rules.

H.      **Declaration of Candidacy**. Following the petition timeframe, candidates are required to submit original petition forms to the County Clerk along with their Declaration of Candidacy form as issued by the Secretary of State's Office. The **County Clerk** is the proper filing officer and will issue the **final determination** of candidates' eligibility for the ballot. Privately Financed Candidates and Publicly Financed Candidates file on separate dates and through a separate process.

1.      Publicly Financed Candidates shall **submit their original petition forms and Declaration of Candidacy form** to the Office of the City Clerk, along with the Secretary of State's Designation of Representative Form **on the final day of the petition timeframe**. The City Clerk will submit the petitions and Declaration of Candidacy form to the County Clerk on behalf of the Publicly Financed Candidates as provided in Section 2-4-10(G), ROA 1994.

2.      Privately Financed Candidates shall **submit their original petition forms and their Declaration of Candidacy** form to the **County Clerk** directly **seventy (70) days prior to the election**, as provided in Section 2-4-10(G), ROA 1994. The City Clerk will maintain the original petition forms for candidates until filing day. If candidates decide to take possession of their original petition forms prior to the declaration of candidacy day, the Office of the City Clerk will require the candidate to **sign** a **liability and acknowledgment** of personal responsibility for original petitions.

# Part 13    Public Financing Program/OEEC.

A.    **Qualifying Contributions**

1.    Qualifying Contributions shall **only be collected during the Qualifying Period** as defined in the OEEC.

2.    Applicant Candidates must **submit a Declaration of Intent prior** to collecting any Qualifying Contributions.

3.    Qualifying Contributions shall only be **collected through the paper receipt books** issued by the Office of the City Clerk and checked out to the candidate or the candidate's designated representative, or on the City Clerk's **online platform**: **cleancampaign.cabq.gov.**

4.    Qualifying Contributions go to the Open and Ethical Election Fund, **not the candidate** and are **non-refundable**.

5.    The number of required Qualifying Contributions is determined by **voter registration** in the district in which the candidate is running pursuant to the OEEC, Section 5. The number of registered voters will be extracted from the County Clerk's voter registration database on the first business day in February of an election cycle.

6.    Candidates are **solely responsible** for the paper receipt books checked out to their campaign, including maintaining custody of the receipt books and ensuring that they are filled out in accordance with the OEEC and these rules. The Office of the City Clerk will **provide** the candidate and the candidate's designated representative with **training on how to use the receipt books**, but it is the candidate's responsibility to transmit that information to the campaign, volunteers, and staff.  If a receipt book is lost, the Applicant Candidate should notify the Office of the City Clerk as soon as the loss is discovered.

7.    Family members, domestic partners, and legal guardians who live in and are registered to vote in the **same household may make** Qualifying Contributions in the form of **a single check, or through the use of the same credit card or cash, provided** that each individual signs an individual Qualifying Contribution receipt form electronically or in person and affirms they are doing so of their own free will.

8.    Voters may contribute Qualifying Contributions **to multiple candidates for the same office**.

9.    Physical Qualifying Contributions:

a.    May be collected by the **candidate, paid staff, or volunteers**.

b.      Shall be **collected on the receipt books** provided by the Office of the City Clerk.

c.      Shall be completely filled out to be accepted, including the name of the candidate and district or office the candidate is running for, the name and address of the contributor, signature of the contributor, name and signature of the collector who was present when the $5 Contribution was collected, and the date the Contribution was made.

10.      Contributions and corresponding receipts must be returned to the Office of the City Clerk **each Tuesday** during the Qualifying Period. The Office of the City Clerk will designate a time for these deposits during each cycle.

11.      Campaigns shall return both completed and partially completed receipt books each week.

12.      Candidates shall **return all unused receipt books** within ten (10) days after the end of the Qualifying Contribution period. If a receipt book is lost, destroyed, or unaccounted for, candidates shall submit an affidavit on a form provided by the City Clerk. The City Clerk shall report any unreturned receipt books to the Board of Ethics.

B.      **Verification of Physical Qualifying Contributions:**

1.      For the Office of the City Clerk to **verify a Qualifying Contribution** the Qualifying Contributions must:

a.      Be **legible**;

b.      Have **all sections completed**, including date, council district if applicable, candidate's name, contributor's name, address and signature, and representative's name and signature;

c.      Be a **registered voter** in the applicable district;

d.      Be made **during the Qualifying Period**;

e.      Be obtained through efforts made with the knowledge and approval of the Applicant Candidate and comport with the requirements of the OEEC; and

f.      Be deposited with **corresponding receipts and funds** to the Office of the City Clerk prior to the end of the Qualifying Period.

2.      Candidates will be given an opportunity to rehabilitate a rejected Qualifying Contribution. Procedures for rehabilitation are provided in Part 15 of these rules.

C.      **Electronic Qualifying Contributions**

1.      Electronic Qualifying Contributions shall only be collected on the City Clerk's electronic Qualifying Contribution platform ("website"): **cleancampaign.cabq.gov**.

2.      Electronic Qualifying Contributions can be used as the sole means of collecting Qualifying Contributions, but the **Office of the City Clerk recommends against this as**:

      a.      The website should be used as an **additional tool** for collection.

      b.      Connection issues, user errors, or any other disruptions to the site or registration database could cause the website to function at **suboptimal levels** at any given time.

      c.      The Office of the City Clerk *will not* add additional time to the Qualifying Period or operate on non-business days due to issues with the website as it is **an additional tool** rather than the sole means for collection of Qualifying Contributions.

3.      Qualifying Contributions accepted by the website are **automatically verified**.

      a.      However, the website **cannot account for any duplicates** that may appear in the paper receipt collection.

      b.      If a Qualifying Contribution from a paper receipt was previously accepted by an individual who later donates on the website, that website donation will be rejected by the Office of the City Clerk when the **two lists are merged**.

4.      Candidates are **responsible for the "swipe fees"** from the website.

      a.      These **fees are $.35/transaction** and may be paid from the candidate's **Seed Money**, or **distribution**, if the candidate is qualified for public financing.

      b.      If the candidate is **not qualified** for public financing, the candidate is **still responsible for these swipe fees**.

      c.      The Office of the City Clerk will **issue a letter** requesting the applicable amount to be paid to the City from the candidate following the Qualifying Period, or **will automatically deduct this amount from the candidate's distribution**.

      d.      Failure to pay the "swipe fees" may result in a complaint or a fine from the Board of Ethics.

D.    **Contributions**

1.    **Applicant and Participating Candidates** may only accept Contributions in the following forms:

   a.    Seed Money during the exploratory and Qualifying Period.

      i.    *Seed Money from the candidate themselves* may be made prior to the exploratory period, but must not exceed the threshold outlined in OEEC, Section 3(V).

   b.    In-Kind Contributions that can be made anytime during the exploratory period through the election day or runoff election day if applicable.

      *Note:* Individual and aggregate limits for both Seed Money and In-Kind Contributions can be found in the OEEC and on the City Clerk's website, **cabq.gov/vote**.

2.    Seed Money may be donated by any Person as defined in the OEEC. This requires a person to be a **resident of the City of Albuquerque**.

3.    In-Kind Contributions may be made by any Person as defined in the EC. This does ***not*** require an individual to be a resident of the City of Albuquerque.

4.    Applicant Candidates may accept a loan; however:

   a.    A loan to an Applicant Candidate shall:

      i.    Be considered a Contribution;

      ii.   Be reported as a Contribution; and

      iii.  Be subject to the **individual Seed Money Contribution limit**, including a loan by the candidate to their campaign.

   b.    Applicant Candidates may only **repay loans** from Seed Money Contributions.

   c.    Any loan from an Applicant Candidate to their campaign must be repaid **prior to the Applicant Candidate becoming a Participating Candidate**. Loans not repaid must be reported as Expenditures.

E.    **Permissible Expenditures**

1.    **Expenditures for "campaign-related purposes"** are those which are traditionally accepted as necessary to promote the election of a candidate to political office. Candidates using Open and Ethical Election Funds **must also** account for:

   a.    The public nature of the funds;

   b.    The underlying objectives of the OEEC; and

    c.    The reasonableness of any Expenditure under the circumstances.

    2.    Examples of campaign-related Expenditures include but are not limited to:

    a.    **Political advertising** expenses.

    b.    Campaign **communications** such as:

    i.    signs, bumper stickers, T-shirts, or caps with campaign slogans, etc.

    c.    Campaign **events** such as:

    i.    invitations, **food, tent or hall rental**, etc.

    d.    **Printing** and mailing costs.

    e.    Campaign **staff expenses**.

    f.    Event-related expenses: an entry fee for an event organized by a committee, charity, or community organization or an ad in an event publication, **as long as the Expenditure benefits the candidate's campaign**.

    g.    **Reasonable payment** for candidate's campaign-related childcare.

    h.    Campaign operational and travel expenses, such as:

    i.    fuel and tolls, websites, office rental, telecommunications, equipment, or office supplies.

    i.    Tuition or **registration costs** for campaign or policy issue training.

    j.    Car travel **reimbursement** to the candidate or campaign staff:

    i.    Each individual reimbursed must keep a contemporaneous travel log.

    ii.    Reimbursement shall be made at the IRS mileage rate for a business.

    iii.    Personal funds for campaign travel:

    (a)    Candidates and spouses/domestic partners may spend any amount of their personal funds for campaign travel without seeking reimbursement.

(b)    Other individuals **may spend up to $250** of their personal funds to pay for travel without the Expenditures qualifying as a Contribution to the campaign.

k.    Reasonable amounts of Open and Ethical Election Funds may be spent **on food for campaign events or to feed volunteers** while they are working. Candidates may not spend Open and Ethical Election Funds on food consumed only by the candidate or members of the candidate's immediate family. Generally, reasonable amounts of food should **not exceed $25/per person** per event.

l.    Campaign-related lodging:

i.    Excluding the candidate's primary residence or the residence of the candidate's immediate family.

ii.    Lodging **must be necessary** for campaign purposes, and may not exceed fair market value.

iii.    Candidates may use personal funds for lodging as long as they are **not reimbursed by others**.

m.    **Office supplies to be used for campaign purposes**. Office supplies **may not** be used for constituent communications or other expenses associated with service as a public official.

n.    Campaign-related services by staff or consultants. Compensation should be made at fair market value and records should be maintained to show the services rendered.

F.    **Prohibited Expenditures**

1.    **Candidates may not use Open and Ethical Election Funds for personal expenses** or for invalid political expenses, as detailed below. This includes:

a.    **Borrowing from or using Open and Ethical Election Funds for personal** or other non-campaign expenses, even if temporarily and with the intention of repaying the funds.

2.    Personal expenses for goods and services that the candidate would otherwise purchase independently of the campaign, including but **not limited to**:

a.    **Day-to-day household expenses** and supplies;

b.    Mortgage, rent, or utility payments for the candidate's personal residence, even if part of the residence is being used by the campaign;

c.    **Vehicle repair and maintenance**;

d.    Non-campaign transportation expenses; or

e.    **Clothing, including attire for political functions** such as business suits or shoes.

3.    Expenditures for any purpose, other than the furtherance of the candidate's nomination or election **are expressly prohibited**.

4.    Open and Ethical Election Funds **<u>may not</u>** be spent to:

a.    Pay a consultant, vendor, or campaign staff for anything other than campaign goods or services;

b.    Compensate the candidate for **services provided** by the candidate;

c.    Make Independent Expenditures **supporting or opposing any candidate, ballot question, or political committee**;

d.    Assist in any way the campaign of any candidate other than the candidate for whom the funds were originally designated;

e.    **Contribute to another candidate**, a political committee, a Measure Finance Committee, or a party committee other than in exchange for goods and services;

f.    **Donate to a charity** or community organization;

g.    **Promote political or socia**l positions or causes **other than the candidate's campaign**;

h.    Make a **thank-you gift (including a gift card) to a volunteer** or supporter;

i.    Pay any **civil or criminal penalties**, fines, or forfeitures;

j.    Pay for an election day, or runoff election day party;

k.    Paid communication that supports or opposes a ballot measure, referendum, or citizen initiative;

l.    Purchase **alcoholic beverages**; or

m.    Make any payment to a registered voter in exchange for that voter agreeing to vote in an election, sign a petition, or donate to a candidate or the OEEC.

G.    Additional Restrictions for Participating Candidates

1.    Unless otherwise permitted in subsection 2 below, a candidate may *not* pay Open and Ethical Election Funds to:

a.    The candidate or a sole proprietorship owned by the candidate;

b.      A member of the **candidate's immediate family or household** (except in the case of **reasonable payment for childcare**);

c.      A **business entity** in which the candidate or a member of the candidate's immediate family or household **holds a significant proprietary** or financial interest; or

d.      A nonprofit entity in which the candidate or a member of the candidate's immediate family or household **serves as a director, officer, executive director or equivalent**, or chief financial officer or equivalent.

2.      **Conditions for Permitted Payments.** A candidate may use Open and Ethical Election Funds to pay a member of the candidate's immediate family, household member, their business, or nonprofit they control **only if the expenditure is**:

a.      For a legitimate campaign-related purpose;

b.      Paid to an individual or business that provides the goods or services being purchased in the normal course of their occupation or business; and

c.      Be made in an amount that is reasonable and at fair market value and other factors the Board of Ethics may choose to consider.

3.      In order to prove the expenditure in accordance with subsection 2 above the candidate must provide **documentary evidence** that the Expenditure qualifies for the exception at the time the Expenditure is reported or when the City Clerk or Board of Ethics requests such evidence, whichever is sooner. This evidence must include:

a.      Documentation showing the payee is **currently employed** by or engaged in a business that provides the goods or services provided;

b.      **Justification for the amount** of the Expenditure, including the usual price paid by other clients; and

c.      An **explanation of why** the Expenditure is campaign-related. (Occasional or sporadic employment on political campaigns, such as field work, public relations, or organizing volunteers, will be insufficient to demonstrate a normal course of business.)

4.      **Reimbursements.** Reimbursements, including travel reimbursements, made in accordance with the City Clerk and Board of Ethics rules and guidelines are exempt from this restriction. However, the candidate must disclose the family or household relationship when reporting the reimbursement as described above. If an Participating Candidate or a family or household member uses personal funds or a personal credit card to pay a vendor for campaign goods or services, the candidate **must reimburse the individual with Open and Ethical Election Funds**.

5.      Disclosure is required if a candidate uses Open and Ethical Election Funds to pay or reimburse:

a.      A member of the candidate's "immediate family" (as defined in the OEEC);

b.      A member of the candidate's household; or

c.      A business or nonprofit entity affiliated with a member of the candidate's immediate family.

6.      The candidate must **disclose the family or household relationship** (e.g., "spouse," "domestic partner," "brother," "roommate," or "business owned by daughter") in the campaign finance disclosure report.

H.      **Liquidation of Property or Equipment**

1.      Property and equipment not exclusive to use in a campaign (e.g., computers and associated equipment, etc.) and has been **purchased with Open and Ethical Election Funds** loses its campaign-related purpose following the election. Such property and equipment **purchased for $50 or more must be liquidated** and the proceeds reimbursed to the Open and Ethical Election Fund as unspent fund revenue in accordance with OEEC, Section 8. Candidates may **not return unsold property or equipment to the City Clerk**.

2.      The liquidation of campaign property and equipment **may be done by sale to another person or purchase by the candidate**.

a.      If the campaign sells the property or equipment to the candidate or a member of the candidate's immediate family or campaign staff, the **campaign must receive at least 75% of the original purchase price**.

3.      Liquidation must be at the fair market value of the property or equipment at the time of disposition.

I.      **Withdrawal of Applicant or Participating Candidate**

1.      **Applicant Candidates:** An Applicant Candidate may withdraw as an Applicant Candidate by filing a written withdrawal on a form approved by the City Clerk. Withdrawal may occur at any time during the Qualifying Period and **up to ten (10) days after the final submission** of Qualifying Contributions.

a.      Withdrawing Applicant Candidates shall submit all **Qualifying Contributions**, and all used and unused receipt books to the City Clerk.

b.      Applicant Candidates who withdraw or do not qualify as a Participating Candidate are **not subject to spending limits** as outlined in the OEEC if they continue as a non-Participating Candidate (or a Privately Financed Candidate).

c.      Any **Seed Money** collected prior to withdrawal may be maintained in the candidates account as funds for a privately funded campaign.

d.      If the Applicant Candidate withdrawals from the race completely, and does not continue on as a Privately Financed Candidate, any Seed Money raised shall be disposed of in accordance with EC, Section 4.

2.      **Participating Candidates:** A Participating Candidate may withdraw their participation as a Publicly Financed Candidate **up to thirty (30) days** after being certified as a Participating Candidate by filing the statement of withdrawal with the City Clerk on the approved form. Withdrawn Participating Candidates may continue their campaign as a non-Participating Candidate (or a Privately Financed Candidate) or withdraw from a race completely as stated in OEEC, Section 12 (D), (E), and (G). Obligations Upon Withdrawal:

a.      A candidate who files a statement of withdrawal must return to the fund the amounts required by OEEC, Section 12(E) or (G) of the City Charter.

b.      A withdrawn Participating Candidate must also submit corresponding reports to the City Clerk when the withdrawal is filed. Candidates **shall continue to file financial disclosure reports** until they come into compliance with EC Section 4(d)(2)(F).

3.      Participating Candidates who do not qualify as candidates: A Participating Candidate who does not qualify as a candidate pursuant to NMSA 1978, Section 1-22-10 shall:

a.      Deliver to the City Clerk the funds as outlined in OEEC Section 12(F) **within five (5) days** from the date of notice they have not qualified as candidates.

b.      All money received from the fund and corresponding reports are due to the City Clerk when the withdrawal is filed.

4.      **Use of refunded money:** The City Clerk will **not redistribute funds** returned to the Open and Ethical Elections Fund pursuant to this Part to other Participating Candidates in the present election cycle for the regular local election. However, the City Clerk may use the returned funds to **correct a distribution reduction** caused by OEEC, Section 13.

## J.      **Unopposed Participating Candidates**

1.      An unopposed Participating Candidate is a candidate who:

a.      Has been certified as a Participating Candidate by the City Clerk;

---

      b.      Has been certified as a candidate on the ballot by the County Clerk; and

      c.      Has no certified opponent on the ballot.

2.      Notice and Return of Funds

      a.      When a Participating Candidate becomes an unopposed Participating Candidate, the City Clerk shall give such candidate **notice that they are unopposed**.

      b.      Within **three (3) days** of the notice, the unopposed Participating Candidate must:

      i.  **Return all funds** they have received from the distribution, minus the **legitimate Expenditures made to the date of the notice**.

      ii.  Include any encumbrances that were incurred prior to notice as legitimate Expenditures.

3.      Submission of Detailed Accounting

      a.      The unopposed Participating Candidate shall submit a **detailed accounting of**:

      i.  All Expenditures made to the date of the notice.

      ii.  Any **contractual obligations** through the day the Participating Candidate becomes unopposed, specifying encumbrances or outstanding obligations.

4.      Future Finance Reporting

      a.      All future **financial reports** submitted by the candidate shall:

      i.  Include accounting of any **encumbrances** or **outstanding obligations** that are continuing to be paid by the distribution.

      ii.  Distinguish between obligations paid with distribution funds and those paid with newly raised funds once the candidate is **no longer a Participating Candidate**.

5.      Termination of Participating Candidate Status

      a.      Once **all unencumbered funds** of an unopposed Participating Candidate have been returned to the fund:

      b.      The unopposed Participating Candidate ceases to be a Participating Candidate.

c.     The unopposed Participating Candidate is no longer subject to the **Contribution** and **Expenditure limits** applicable to Participating Candidates.

d.     The unopposed Participating Candidate is considered Privately Financed Candidates, and may fundraise as a Privately Financed Candidate if they so choose.

K.     **Certification of Participation**

1.     **Application for certification**. Applicant Candidates who would like to be considered for certification as a Participating Candidate must submit an **application of certification** by the final day of the Qualifying Period.

a.     The City Clerk shall notify all Applicant Candidates whether they have been certified as Participating Candidates:

i.   By directly notifying each Applicant Candidate; and

ii.  By posting the final signed application of certification on the City Clerk's website.

b.     Certification as a Participating Candidate does not eliminate or modify candidate qualification requirements of the City Charter or New Mexico Law.

2.     **Criteria for Certification**. In addition to the criteria for certification listed in OEEC, Section 7, upon receipt of an application of certification, the City Clerk shall also determine whether the Applicant Candidate has:

a.     Accepted Contributions in excess of the pre- and post-exploratory period limitations set forth in the OEEC;

b.     Complied with **Seed Money** and **In-Kind** restrictions;

c.     Run for the same office as a **non-Participating Candidate** in the same election year;

d.     Made a materially false statement in a report or other document submitted to the City Clerk;

e.     Failed to pay any civil penalty assessed by the City Clerk or Board of Ethics:

i.   A candidate has **three (3) days** from the date of the request for certification to pay the outstanding penalty and remain eligible for certification.

f.     **Submitted falsified or fraudulent Qualifying Contributions** or acknowledgment forms for Qualifying Contributions or Seed Money Contributions, where the Applicant Candidate knew or should have known of the fraudulence or falsification; and

g.      Been found, through the **random audit** of Qualifying Contributions by the Office of Internal Audit, to have committed fraud or otherwise failed to comply with the rules of the OEEC regarding the collection of the Qualifying Contributions.

3.      **Denial of Certification.** If the City Clerk makes any of the findings above, the City Clerk **shall not certify** the Applicant Candidate as a Participating Candidate.

4.      **Appeals.** An Applicant Candidate whose certification has been denied may appeal the City Clerk's determination as provided in OEEC, Section 18.

L.      **Revocation of Certification**

1.      **Grounds for Revocation.** Certification of a Participating Candidate may be revoked at any time by the City Clerk if the City Clerk determines that the candidate or a representative of a candidate:

a.      Did not **submit the required number** of valid Qualifying Contributions;

b.      Failed to qualify as a candidate by petition or other means;

c.      **Submitted any fraudulent Qualifying Contributions** or Qualifying Contributions that were not made by the named contributor, and the Participating Candidate **knew or should have known of the fraudulence**;

d.      **Misrepresented** to a contributor the **purpose of the Qualifying Contribution** or obtaining the contributor's signature on the receipt and acknowledgement form and the Participating Candidate knew or should have known of the misrepresentation;

e.      Failed to fully comply with the Seed Money and In-Kind restrictions;

f.      **Knowingly made a false statement** or material misrepresentation in any report or other document required to be filed under the OEEC, EC or the rules by the City Clerk; or

g.      Otherwise **substantially violated** the provisions of the OEEC, the EC or the rules by the City Clerk.

2.      **Notice and Informal Hearing**.

a.      The City Clerk shall provide notice to the Participating Candidate that the **City Clerk is contemplating revoking certification** and the explain grounds for revocation.

b.       The Participating Candidate may request an informal hearing before the City Clerk, which shall be held within **three (3) days** of notification that the City Clerk is contemplating revocation.

c.       The City Clerk shall provide notice to the Participating Candidate of the City Clerk's decision within **three (3) days** of any informal hearing, or on the next business day after the time to request an informal hearing has expired.

3.       **Obligations Following Revocation.** A candidate whose **certification has been revoked shall return all unspent funds** to the City Clerk **within three (3)** days of notification of revocation and may be required to return all funds distributed to the candidate.

4.       A candidate whose certification has been revoked may be subject to **civil penalties**.

5.       A candidate whose certification has been revoked may appeal that determination pursuant to OEEC, Section 18 of the City Charter.

M.   **Distribution of Funds**

1.       The Office of the City Clerk, though the Treasury Department, will **distribute payment to certified candidates** from the fund **electronically**. Participating Candidates shall provide all necessary information for electronic transfer on the form prescribed by the City Clerk.

2.       The City Clerk will provide the **final total** to the Treasury Department to initiate the transfer of funds upon certification of a Participating Candidate and calculation of the funds due to Participating Candidates (i.e.: the **distribution minus Seed Money collected and swipe fees due to the City**). The transfer of funds is subject to banking regulations and funds are typically available one business day after the transfer is initiated.

3.       The City Clerk shall distribute funds in accordance with OEEC, Section 12, subject to the availability of funds.

N.   **Re-payment of Funds to City**

1.       Participating Candidates **shall return all funds** to the City Clerk that are unspent or unencumbered as of the date of the regular local election for deposit into the fund.

2.       The date of the regular local election is the last day that candidates may spend or encumber funds.

3.       Candidates shall return the remaining funds **within two (2) weeks of date of the regular local election**.

4.    The final campaign disclosure report filed by a Participating Candidate shall show:

a.    The amount of unspent Seed Money;

b.    Any unspent distributions from the fund; and

c.    The amounts **refunded by the candidate to the City Clerk** in accordance with the OEEC, Section 8(C).

# Part 14    Use of the Electronic Petition Site and Electronic Qualifying Contributions Site.

A.    **Access the Electronic Platforms**

1.    The Office of the City Clerk will make available an electronic platform for:

a.    **Collect petition signatures;** and

b.    **Qualifying Contributions.**

2.    The websites provided by the Office of the City Clerk **shall be the only electronic means** for the collection of electronic petition signatures or electronic Qualifying Contributions.

B.    **Purpose and Limitations of the Platform**

1.    The electronic platforms should be used as an **additional tool** for the collection of petition signatures and Qualifying Contributions.

2.    The Office of the City Clerk is **not responsible for user error, connectivity issues, or any other technical disruptions** to the site that may occur during the course of the petition and Qualifying Contribution period.

C.    **Troubleshooting Website Issues**

1.    The Office of the City Clerk will:

a.    **Work with the vendor** to troubleshoot any issues that may arise with the website during the petition and Qualifying Contribution timeframe.

b.    **Assist any individual** having issues with the website and troubleshooting the issue.

2.    Important Notes:

a.      The website is provided as an additional tool for the collection of petitions and Qualifying Contributions and **should not** be used as the **sole means of collection**.

b.      **Timeframes will not be extended** if an issue occurs with the website.

c.      If an individual is unable to contribute or sign on the website, the Office of the City Clerk will **direct the individual** to the **candidate's campaign** where they can find information on signing a petition or contributing a Qualifying Contribution on the traditional **paper forms**.

D.    **Candidates Data Access**

1.      Candidates will be provided with their own login to the websites where they will be able to **view or download their own data**.

2.      The Office of the City Clerk will provide **weekly reports** of verified petition signatures (for candidates participating in the City Clerk's verification process) and Qualifying Contributions.

3.      The **reports merge data** from the paper submissions and the electronic submissions.

4.      Reports can be used by candidates for rehabilitation requests as prescribed in Part 15 of these rules.

5.      Because this data is readily available to the candidate, the Office of the City Clerk will not provide data from these websites to candidates through any means other than an IPRA request.

E.    **Website Access**

1.      The websites will be made available to candidates at **8:00 a.m.** on the first day of the petition or Qualifying Period.

2.      The websites will be shut off at **5:00 p.m.** on the final day of the petition or Qualifying Period.

# Part 15    Rehabilitation of Petition Signatures and Qualifying Contributions.

A.    **Weekly Updates on Accepted and Rejected Signatures**

1.      Candidates will be provided with a list of **accepted** and **rejected** petition signatures and Qualifying Contributions each week.

2.       Rejected petition signatures or Qualifying Contributions will indicate a **reason for rejection**, including, but not limited to:

a.      Not legible;

b.      Not registered;

c.      Incomplete;

d.      Not in jurisdiction;

e.      Not signed;

f.      Deceased; or

g.      Duplicate.

3.      Any candidate may request the City Clerk to reconsider the acceptance of a previously submitted **petition signature** or **Qualifying Contribution**. The **City Clerk** may **reject** a previously accepted petition signature or Qualifying Contribution when the Clerk determines the signature or Contribution **should have been rejected** when credible evidence supports such a determination. Credible evidence is **the type of evidence reasonably relied upon by prudent individuals.**

B.      **Requesting Rehabilitation** of Rejected Signatures or Qualifying Contributions

1.      Candidates may **rehabilitate** a signature or Qualifying Contribution rejected by the Office of the City Clerk or Qualifying Contributions that fail the audit by the Office of Internal Audit by providing **proof** to the Office of the City Clerk **within seven (7) days after notification** of rejection as outlined in subsection C below. The candidate must submit documentation to the Office of the City Clerk to:

a.      Clarify the voter's name or address;

b.      Include current voter registration of the rejection; and

c.      Include a written attestation by the registered voter verifying the information on the original signature or Qualifying Contribution, on a form provided by the Office of the City Clerk.

C.      In addition to those items required in B(1) above, the following is required to rehabilitate a signature or Qualifying Contribution:

1.      For signatures or Qualifying Contributions that were rejected for incompleteness, or lack of signature the candidate must provide the original submitted document was complete by showing proof of the candidates copy of the petition or receipt.

2.      Signatures or Qualifying Contributions rejected because the contributor or signor appears as deceased or a duplicate record was found must prove that the Office of the City Clerk made that determination in error.

3.      Candidates may request the Office of the City Clerk to review these records for rehabilitation.

4.      Should a Qualifying Contribution be rejected, the Applicant Candidate may subsequently attempt to obtain a **new qualifying Contribution** from the same contributor once the underlying issue, such as voter registration, has been corrected.

# Part 16    Withdrawal of Candidacy.

Privately Financed Candidates may withdraw as candidates by filing a written withdrawal on a form approved by the City Clerk. Any money raised shall be disposed of in accordance with EC, Section 4. Candidates **shall continue to file financial disclosure reports** until they satisfy EC, Section 4(d)(2)(F).

# Part 17    Write-In Candidates.

A.      Write-In Candidates Requirements and Procedures

1.       Write-In Candidates are permitted in **regular local elections** in accordance with **NMSA 1978, Section 1-22-8.1**.

2.      A person may be a **write-in candidate** only if the person has the qualifications to be a candidate for the position for which the person is running.

3.      A person desiring to be a Write-in Candidate for an office shall **file** with the proper filing officer a **declaration of candidacy**.

a.      The declaration shall be filed between **9:00 a.m.** and **5:00 p.m.** on the sixty-third day preceding the date of the election.

b.      The **County Clerk** shall ensure that a declaration of candidacy filed pursuant to this section specifies that it is for a **Write-in Candidate**.

4.      At the time of filing of a legally sufficient declaration of candidacy, the Write-in Candidate shall be considered a candidate for all purposes and provisions relating to candidates in the Local Election Act, except that:

a.      The Write-in Candidate's **name shall not be printed** on the ballot.

b.      The candidate's name **shall not be posted** in any polling place.

# Part 18    Disclaimers.

A.    **Required Disclaimers**

1.    The following disclaimers are required on all campaign materials broadly distributed in support or opposition of a candidate or ballot measure:

a.    Printed Campaign Materials

i.    Each candidate and each chairperson of each Measure Finance Committee shall **ensure that all printed campaign materials specify**:

(a)    The name of the campaign or committee that authorized the printing or distribution of such material.

(b)    The name and address of the establishment that printed or otherwise created the campaign materials. The following exceptions include:

1.    The name and address of the printing establishment is not required to be specified in a newspaper advertisement.

2.    If the campaign prints the materials, the disclaimer must state **"printed in-house."**

(c)    Printed disclaimers **must be in black text on a white background**.

ii.    Examples of printed materials include but are not limited to:

(a)    Flyers

(b)    Posters

(c)    Mailers

(d)    Billboards

(e)    Banners

(f)    Brochures

(g)    Business Cards

(h)    Yard Signs

b.    Broadcast Campaign Materials

i.    For Audio Broadcasts: The disclaimer shall be spoken at the end of the communication. The audio statement must be read in a

clearly spoken manner with pitch and tone substantially similar to the rest of the advertisement.

    ii.  For Video Broadcasts: The disclaimer shall be printed in **black text on a white background**. The text must appear in letters equal to or greater than **4% of the vertical picture height**.

    c.     All disclaimers must be clear and conspicuous regardless of the transmission medium. A disclaimer is not clear and conspicuous if it is difficult to read or hear, or if the placement is easily overlooked. **Disclaimers must use a font size that is readable by the average viewer**.

    2.     Disclaimers are **not required** to include the **name** of the campaign **treasurer** or MFC treasurer.

    B.     **Disclaimer for Independent Expenditure, Coordinated Expenditure and MFC Supporting or Opposing a Measure**

    1.     **In addition** to the required disclaimers, campaign materials produced for Independent Expenditures, Coordinated Expenditures, or Measure Finance Committees shall include:

    a.     The words **"Paid for by"** followed by the name of the entity making the Expenditure and its Chairperson;

    b.     The words "**Top Five Donors" followed by a list of the five (5)** persons or entities making the largest aggregate donations to the entity during the twelve (12) month period before the date of such communication; and

    c.     For **Independent Expenditures and Measure Finance Committees**: A statement that the campaign material is not authorized by any candidate or candidate's campaign committee.

    d.     For **Coordinated Expenditure**: A statement that it is authorized by a campaign or committee, and the communication must include the name of the campaign or committee that authorized the expenditure.

    2.     **Secondary Donor.** If any of the top five donors is a committee, organization, or other entity the disclaimer must also disclose the name of the **top two donors of $1,000 or more to that committee**.

    a.     If the top five donors change due to a new Contribution, any print media shall include the updated list of donors at the next printing of materials.

b.    *Exception*: Short audio and video advertisements (30 seconds or less) are not required to disclose the secondary contributors.

3.    Disclaimer statements appearing on any visual medium shall also **be visible for the entirety of the communication**.

C.    **Disclaimer for Candidate Committees**

1.    In addition to the required disclaimers, campaign materials produced by a candidate, must state that the communication was paid for by the authorizing committee.

2.    Broadcast, radio, or television communications that are authorized and paid for by a candidate or a candidate's committee must **include a statement by the candidate stating that the candidate has approved the communication** as follows:

a.    Broadcast or television communications shall include both a visual and audio statement that the candidate has approved of the communication.

b.    Radio communications shall include an audio statement read **in a clearly spoken manner with pitch** and tone substantially similar to the rest of the advertisement.

D.    **In-Kind Contributions of Printed Materials**

1.    In-Kind Contributions of printed materials used or distributed by a candidate, Measure Finance Committee, political committee, or other entity must include the name or title of that candidate, Measure Finance Committee, political committee, or political action committee as the authorizing agent for the printing and distribution of the In-Kind Contribution.

E.    **Telephone calls, text messages, emails, websites, and social media posts**

1.    Prerecorded automated telephone calls, scripted live telephone communications, **text messages**, emails, **websites**, and **social media** posts name a clearly identified candidate must include:

a.    A disclaimer clearly identifying the **name of the person, candidate, or committee** who made or financed the Expenditure for the communication.

2.    **Communications** made for the purpose of researching the views of voters **do not require a disclaimer**.

3.    **For Text messages**:

a.    The disclaimer must appear in the **body of the text**.

b.      In a sequence of multiple text messages sent on the same day, the disclaimer is only required on the first text message.

4.      **For Emails**: The disclaimer must appear in a font size that is at least the same size as the majority of the text in the email.

5.      **For Paid or Boosted Social Media Advertisements**:

a.      Posts, comments, or other communications made via social media must include an **"Ad paid for by" disclaimer**.

b.      The disclaimer must be displayed in no less than **10-point font** on each individual post that serves as an advertisement.

6.      For committees other than the candidate, the name of the committee in the disclaimer may be shortened to uniquely identify the committee.

F.      **Campaign Finance Disclosure Report**

1.      Required Reporting:

a.      As a part of each **campaign finance disclosure report**, every **candidate, treasurer, or chairperson shall submit** a detailed accounting of **any political communications** that resulted in an Expenditure.

b.      This includes but is not limited to:

i.      Signs, billboards, doorknockers, promoted or boosted social media posts, broadcast media, t-shirts, bumper stickers, or buttons.

c.      The campaign finance disclosure report shall include details regarding the **size and quantity** of such communications, as applicable.

d.      Each campaign finance disclosure report shall be accompanied with **images or proof** of how funds were expended. Images shall be submitted **electronically** through the Campaign Finance Reporting System.

G.      **Exclusions**

1.      The requirements of the communication disclosure rules **do not apply** to:

a.      Handbills or other literature produced and distributed at a **cost not exceeding $100** and prepared by one or more individuals who are not required to register or file campaign finance disclosure reports with the City Clerk and **who are acting independently** of, and **without authorization** by, a candidate, candidate's authorized campaign committee, Measure Finance Committee, party committee, political action committee or ballot question committee, or an agent thereof;

b.      Campaign signs produced and distributed at a cost **not exceeding $100**, paid for by one or more individuals who are not required to register or file campaign finance disclosure reports with the City Clerk and **who are acting independently** of, and **without authorization** by, a candidate, candidate's authorized campaign committee, Measure Finance Committee, party committee, political action committee or ballot question committee, or an agent thereof;

c.      Internet and e-mail activities **costing less than $100**, paid for by one or more individuals **acting independently** of, and **without authorization** by, a candidate, candidate's authorized campaign committee, Measure Finance Committee, party committee, political action committee or ballot question committee or an agent thereof;

d.      Campaign signs that are financed by the candidate or candidate's authorized committee that clearly identify the name of the candidate and are **lettered or printed individually by hand**; or

e.      **Any campaign materials that a disclosure cannot be conveniently printed** (ex: stickers, pens, campaign buttons, etc.) or items where the display is not practicable or would defeat the item's primary purpose or function. (ex, wearing apparel, skywriting, water towers, etc.).

# Part 19   Complaint Process.

Complaints for violations of the EC and OEEC shall be made in accordance with the City Charter and the rules of the Board of Ethics.

# Part 20   Runoff Election

A.      **Runoff Elections as a New Election**

1.      Runoff Elections are considered a new election rather than a continuation of the general election.

2.      **Individual Contribution limits**, including In-Kind Contribution limits, and aggregate limits for Participating Candidates are **reset the day after the general election**.

B.      **Updated Limits and Runoff Distribution**

1.      For Participating Candidates, the day after the general election:

a.      The Office of the City Clerk shall make available the **updated aggregate limits** for each applicable district.

b.    The Office of the City Clerk shall provide each candidate with the amount of their runoff distribution.

2.    Participating Candidates have the option to **take public financing** in the runoff election or **become a Privately Financed Candidate**.

C.    **Requirements for Participating Candidates**

1.    If a Participating Candidate remains a Participating Candidate:

a.    **Within three (3) business days** following the general election:

i.    The candidate shall **return any unspent or unencumbered** funds from the general election distribution to the Office of the City Clerk; and

ii.    The funds must be returned in the form of a **check or money order** made out to the **City of Albuquerque**.

b.    **A new distribution** will be made to the candidate within three (3) business days.

D.    **Transition to Privately Financed Status**

1.    If a Participating Candidate **chooses to be a Privately Financed Candidate** for the runoff election:

a.    The candidate shall return any **unspent or unencumbered funds** from the general election distribution.

b.    The funds shall be returned **within fourteen (14) days** of the date of the general election to the Office of the City Clerk in the manner in Subsection (C)(1)(a) above.

c.    The candidate may **raise Contributions** and **make Expenditures outside of the restrictions** of the OEEC once the candidate has notified the Office of the City Clerk of their decision.

# Part 21    Effective Date.

These rules shall take immediate effect after publication by title on the City Clerk's website and completion of the report in accordance with 2-15-2(B), ROA 1994.

# Part 22    Forms.

**Required for All Candidates**

1. Declaration to Seek Elected Office

2. Acknowledgment of Charter, Code, Training on Petition and Qualifying Contributions, Campaign Finance Reporting System, and Rules.

3. Designation of Representatives, Definition of Representative

4. Candidate Contact Sheet

5. Bank Account Confirmation

6. Acknowledgement of Finance Reporting Training

7. Weekly Petition Submission

8. Declaration of Candidacy – Issued by the County Clerk

**Additionally Required for Publicly Financed Candidates**

1. Declaration of Intent to Seek Public Financing

2. Application for Certification

**Additional Forms – As Needed**

1. Withdrawal as a Candidate

2. Withdrawal as an Applicant Candidate, switch to Private Financing

3. Withdrawal as a Participating Candidate

4. Waiver of Liability and Acknowledgement of Personal Responsibility for Original Petitions

5. Affidavit of Lost or Destroyed Books

6. Rehabilitation Request Form

7. Closure of Campaign

**Measure Finance Committees**

1. MFC Registration

2. MFC acknowledgment of Charter, Code, and Campaign Finance Reporting System, and Rules.

3. Committee Contact Sheet

4. Closure of Committee

5. Bank Account Confirmation